## SOUTHERN S. S. CO. v. SHEPPEARD.

District Court, S. D. of Texas, at Houston.
July 11, 1929.

No. 374.

Royston & Rayzor, of Galveston, Tex., for plaintiff.

H. M. Holden, U. S. Dist. Atty., and Douglas McGregor, Asst. U. S. Atty., both of Houston, Tex., for defendant.

HUTCHESON, District Judge. This is an equity action brought under the Longshoremen's and Harbor Workers' Compensation Act (33 USCA §§ 901–950) to enjoin the taking effect of an award of the commissioner in favor of one Cisro Cummings, plaintiff, alleging that for and in consideration of the sum of $260 paid him, and the further consideration of plaintiff's promise to take him back into plaintiff's employ at the same rate of pay earned by him before the accident, Cisro Cummings executed a release, a covenant not to sue, and acknowledgment of full satisfaction of his claim against the Southern Steamship Company.

The award attacked was made after a hearing initiated by the commissioner on notice to Cummings and the plaintiff. The hearing having been called to order by the commissioner, the following proceedings occurred.

"The Commissioner: You have been called in here, Cisro, to have the facts developed in your case. Are you represented by counsel?

"Cisro Cummings: No sir, I ain't got one.

"The Commissioner: Do you want one?

"Cisro Cummings: No sir; I don't need no lawyer."

There was then presented a stipulation reciting: That Cisro Cummings, on the 26th day of September, 1928, while in the course of his employment aboard the steamship San Antonio, and while working for the Southern Steamship Company, received an injury to the distal or second phalanx of his right thumb which necessitated the amputation of said distal phalanx. That the complainant suffered the complete loss of the distal phalanx of his right thumb. That medical assistance and care were furnished as required by law. That the bills and charges for same were paid by the Southern Steamship Company. That, after the injury, the claimant received payment in the form of weekly payments of the sum of $20 per week. That on the 19th day of November, 1928, he executed a release to the Southern Steamship Company which recited a consideration of $260 and other considerations in exchange for which Cummings released the Company and agreed that he would not prosecute any claim against them for compensation, that he would not make application to any deputy commissioner or to any United States Compensation Commission for compensation, that he would not apply to the commissioner or the court to set aside the release, and that, in the event the deputy commissioner should start proceedings to compel the payment of compensation, he would refuse to sanction the proceedings or to be bound by it, and that he would not accept any sums which the company might be ordered to pay in carrying out the terms and conditions of any award. That he had received all the compensation which he considered due him, and he was not entitled to any other sums.

On the hearing, Cummings testified that the company paid him $260 and he went back to work; that he had a good place; that he had been working for the company for four years; and that they took him back and have been paying him the same amount since.

As to the agreement, he said that, when

the doctor discharged him as able to work, he went to the employer of the company with the envelope given him by the doctor, and with the statement that the doctor said he was excused; that he said nothing to Bates about going back to work or about settling, but that Bates said: "Today is your settling day; you will get all your money today."

"The first thing he said 'What, do you think your finger is worth, Cisro?' I said 'I don't know, sir; as far as the worth part, it is worth $500 but I am a colored man here in Houston and have got to take what I can get,' and he said he would do the right thing by me so there was nothing for me to do except take his word for it and go ahead.

"I said I was willing to take what he would give me. He offered me $100 or $85.-00—I told him 'Look here Captain, that isn't enough' and he said 'Well I will give you a little more' and I said 'What is the best you can do for me. I am a poor man; I don't know anybody here.' And he said 'Well I will make the whole thing $260.' I says 'All right, if that is the best you can do, that is what I will take.' He said 'Are you satisfied with that?' I said 'Yes sir, I have to be satisfied with it.' I read over the paper before I signed it. I understood it. I thought this meant for me to be through with my settlement and nothing more coming to me.

"Q. You intended that document to be the end of it? A. Yes sir, that is the way I looked at it then because I didn't know any better.

"Q. Did you ask Mr. Bates how much, under the law, was coming to you? A. No sir, I didn't ask him that.

"Q. Did you want to go back to work? Were you anxious to go back to work there? A. Yes sir.

"Q. Mr. Bates told you to report back to work after you signed that release, didn't he? A. Yes sir.

"Q. And you went back to work there? A. Yes sir.

"Q. And have filed no claim for compensation in this case? A. The Grand Deputy wrote me letters about it. I guess I got five or six letters from him before I knowed anything about it. I have never complained to the Commissioner; I have never made any complaint whatever.

"Q. Were you satisfied with the settlement and getting your job back? A. Sure; there was nothing else for me to be but satisfied.

"Q. You mean you did not file this claim with the Deputy Commissioner? A. I got four or five letters from him written to me,

and he even asked me, he said 'When you got your money why didn't you write me?' I said I didn't know anything about writing you. He said that was his business to see about it.

"Q. Did you want to back out of the settlement made under that contract of release? A. As I told him a while ago, there ain't no backing out for me. I have already done everything I could do. He said it was his business to see to it. I told him I didn't want no lawsuit.

"Q. You didn't want this hearing this morning? A. I don't want no lawsuit.

Q. And you were satisfied with getting your job back, with the settlement, and going on about your business? A. Yes sir.

"Q. The Southern Steamship Company always treated you fairly in your work down there on the wharf? A. Yes sir."

Bates testified that he handled compensation payments; that Cummings signed the release; that Cummings spoke to him each week for some time about the settlement, but he put him off until after the doctor had given him his discharge; that Cummings first disagreed on the amount he stated, and finally they fixed up that amount.

"Q. Did Cummings at any time complain to you, after this release? A. No complaint whatever; he appeared to be perfectly satisfied.

"By the Commissioner: Did you explain to Cummings that he was entitled to more money under the law? A. No sir.

"Q. Did you know whether he was or not? A. I did not know.

"Q. You just thought you had a right to settle with him? A. Yes sir.

"Q. You did not actually know that he was entitled to 37½ weeks? A. No sir.

"Q. Would you have explained it to him if you had known it? A. I would have explained it to him, that that is what was set down by the law, if I had known it."

Redirect examination:

"Q. Did you understand, Mr. Bates, when this settlement was made, that it was a part of the consideration that Cummings was to go back down there and get his old job back at his old wages? A. Yes sir—because he lost nothing whatsoever by it. I would think in some places he might be employed it would disqualify him altogether, but not with us.

"Q. And that was taken into consideration by you when the release was drawn and settlement made? A. Yes sir."

Karn testified that he remembered the injury, and after he recovered from the injury

he went back to work at the same job; that Cummings was a good laborer and always satisfactory.

"Q. Do you have any idea of firing old Cisro because he got one of his phalanxes cut off at the thumb? A. No.

"Q. You made no complaint to him about his being unable to do his work because of his phalanx being cut off? A. No. He does his work as well as he did before. I don't know what happened at the time the release was made; that was handled by Mr. Bates. Cummings never did complain that he was dissatisfied.

"Q. Did you understand from that settlement that in addition to what the man got that he was to come back to work and receive his regular pay? A. Yes, that was understood.

"Q. I believe you stated that his services had been satisfactory ever since he returned to work after the injury? A. Yes sir, very satisfactory."

"The Commissioner: Cisro, do you have any witnesses you want to introduce?

"Cisro Cummings: No sir."

 Upon this hearing the commissioner made findings as to the injury, the amount of compensation actually due under the statute, $20 a week for 37½ weeks, allowed the plaintiff credit for the amount actually paid, and entered an award for the balance due.

Upon this record the commissioner's findings were in exact accordance with the law, and the award cannot be disturbed unless plaintiff has a right to urge the settlement with Cummings.

The Compensation Act provides: "Sec. 15. (b) No agreement by an employee to waive his right to compensation under this Act shall be valid" 33 USCA § 915(b)—and the government contends that the agreement executed by Cummings was such an agreement.

Plaintiff replies that the agreement in question was not a waiver under the terms of this statute which is conceded valid, but is an agreement of settlement, and that the applicable statute is section 16 (33 USCA § 916) providing: "No assignment, release, or commutation of compensation or benefits due or payable under this Act, except as provided by this Act, shall be valid."

Plaintiff asserts that this provision is in violation of the Fifth Amendment of the Constitution guaranteeing liberty of con-

tract, because, unlike section 15 (b) sustained in principle in those cases of which Chicago, B. & Q. R. Co. v. McGuire, 219 U. S. 549, 31 S. Ct. 259, 55 L. Ed. 328, and State ex rel. Davis-Smith Co. v. Clausen, 65 Wash. 156, 117 P. 1101, 37 L. R. A. (N. S.) 466, are typical, that the section which they attack prohibits entirely specific settlements of disputed controversies after they are raised, and is therefore violative of the contract clause.

I am of the opinion that the matter is not before me to decide, for here is a proceeding initiated by the commissioner sua sponte to which Cummings is, as far as the record shows, a mere bystanding party, having no interest in the outcome, and himself in no manner bringing or prosecuting the claim.

Under the undisputed facts, the agreement aside, there is no error whatever in the action of the commissioner, and his award under the statute, being wholly in accordance with law, cannot in this proceeding be enjoined, whatever may be the law as to whether plaintiff under different pleadings and in a different form of action, could obtain relief against the award in the event the beneficiary of it should seek to enforce it.

In short this is a statutory proceeding in which the only issues decided by the commissioner and reviewable by me are whether the plaintiff was injured, what compensation he is allowed by statute and what he shall recover, and that, until the plaintiff seeks to proceed under the award or to claim the benefits of it, the question of whether it is valid and enforceable will not arise, for certainly no agreement can be made which will change the method of compensation fixed by statute or prevent the employee from receiving at the hands of the commissioner, the award guaranteed by statute.

The present pleadings showing no effort on the part of the employee to obtain or enforce the award, the question is academic as to whether the existence of the agreement would prevent its collection if he tried to do so.

It is therefore my opinion, and I so hold, that the settlement matter not being now properly before me, and the award of the Commissioner being in accordance with the statute, the injunction should be denied without prejudice to the right of the defendant, if and when the injured employee undertakes to enforce or collect upon the award, to then present and assert what rights, if any, he has under the settlement.