**CALIFORNIA SHIP SERVICE CO. et al. v. PILLSBURY, Deputy Commissioner.**

No. 11957.

United States Court of Appeals
Ninth Circuit.

June 21, 1949.

DENMAN, Chief Judge, dissenting.

Lasher B. Gallagher, Los Angeles, Cal., for appellant.

H. G. Morison, Asst. Atty. Gen., James M. Carter, U. S. Atty., Clyde C. Downing and Max F. Deutz, Assts. U. S. Atty., Los Angeles, Cal., Alvin O. West, Atty. Dept. of Justice, Washington, D. C. (Ward E. Boote, Chief Counsel, Fed. Security Agency, Herbert P. Miller, Asst. Chief Counsel, Washington, D. C. of counsel), for appellee.

Before DENMAN, Chief Justice, and HEALY and BONE, Circuit Judges.

HEALY, Circuit Judge.

In this proceeding under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., the Deputy Commissioner awarded death benefits to persons found to be dependents of a harbor worker named Robert Johnson who was accidentally killed in the course of his employment on a vessel undergoing repairs in Los Angeles harbor. Suit to enjoin the award was instituted by the employer and its insurance carrier, and the

case is here on appeal from a judgment of dismissal. The principal contentions of the appellants are (1) that the showing of dependency was insufficient to support an award, and (2) that the deputy commissioner erred in his determination of the average weekly wage of the deceased worker.

■ Johnson, who was a colored boy and unmarried, met his death December 6, 1945. He was twenty-one years of age at that time, having been born May 27, 1924. His parents and five small brothers and sisters lived in New Orleans from which place the deceased had come to the Pacific coast to seek work. For the convenience of witnesses the claim of the mother on behalf of herself and the minor children was forwarded by Deputy Commissioner Pillsbury to the deputy commissioner at New Orleans for the taking of testimony on the issue of dependency, and the record was then returned to Commissioner Pillsbury for findings. The proof is that the family was poor and the earnings of the father inadequate to support his wife and their many offspring. The deceased appears to have been more than ordinarily solicitous of the welfare of his kin and there is evidence of his having contributed substantial sums to the mother. It is unnecessary to pursue the subject further than to say that the finding of dependency of the mother and minor brothers and sisters has substantial support in the record.

■ On this phase appellants complain of the receipt and consideration by Commissioner Pillsbury of certain wage reports of ship service companies containing comments to the effect that the deceased claimed to have four or five dependents. Exception is taken to these comments. However, appellants themselves obtained and submitted the wage reports and are hardly in a position to complain of their contents. There was much evidence of dependency aside from the reports and there is no reason for believing that the Deputy Commissioner gave undue weight to the comments. In making an investigation or inquiry or conducting a hearing a deputy commissioner is not bound by common law or statutory rules of evidence.

See 33 U.S.C.A. § 923. Declarations of a deceased employee as to his having dependents are not without evidentiary value, and we think the receipt of such declarations is not error where, as here, they are substantially corroborated by other evidence.

Turning to the second contention mentioned, it appears that the deceased had been following the employment in which he was working at the time of his death for a relatively short period of time, that is to say, from June 20, 1945 to his death December 6 of that year. The record reflects a continuous pattern of employment for the periods June 20 to September 28 and November 6 to December 6, but with no evidence of employment during the six weeks intervening between these periods. The actual weekly earnings while working varied from a low of about $10 for each of two weeks to a high of $86.69, with total earnings of $716.58 for the period. Commissioner Pillsbury determined that the average weekly earnings of the employee at the time of his death exceeded $37.50, and he awarded weekly death benefits to the dependents of 66-⅔% of this amount, namely $25.00. Appellants attack this finding on grounds now to be stated.

■■ While testimony was being taken at New Orleans on the limited issue of dependency counsel for appellants made for the record a formal statement admitting or conceding certain facts unrelated to dependency, among these being that the average weekly wage of the decedent at the time of his injury was $29.62. The deputy commissioner then inquired of the attorney representing the family whether he accepted those same facts, and the attorney replied that he did. On the basis of this so-called stipulation appellants contend that Commissioner Pillsbury was obliged to find that the average weekly wage of the decedent was $29.62. We disagree. The total elapsed time between June 20 and December 6 was twenty-four weeks and one day. Obviously the stipulated weekly amount was arrived at by the process of dividing by twenty-four and a fraction the total earnings of the decedent for the period. The Act prescribes no such method of computing the average

weekly wage. It sets up three alternative standards on one or another of which the weekly wage determination is to be made, depending upon the facts of the particular case. The statutory provisions are shown below.[1] Subdivision (a) is of course inapplicable since decedent had not worked in the employment substantially the whole of the year immediately preceding his death. On a literal reading subdivision (b) might be thought to apply, but the rule in this circuit is that (b) is not to be employed merely because it may be possible to force the transaction into the formula it prescribes. Its use is proper only in situations where the employment is regular and substantially continuous, and such was not the case here. Marshall v. Andrew F. Mahony Co., 9 Cir., 56 F.2d 74; Pillsbury v. Pacific Steamship Co., 9 Cir., 56 F.2d 79; Pillsbury v. Charles Nelson Co., 9 Cir., 56 F.2d 80. Whenever, as in this instance, subdivisions (a) or (b) can not reasonably and fairly be applied subdivision (c) is to be followed. Consult holdings supra. While not expressly so stated in the findings, it is clear that Commissioner Pillsbury resorted to subdivision (c) in determining decedent's average weekly wage; and as already intimated we are of opinion that this procedure was in line with the interpretation given the statute by the decisions of this court.

 Appellants do not appear to argue that the Commissioner's determination was not in accordance with law; their contention is rather that the Commissioner was without authority to ignore or reject the stipulation of the parties. We think otherwise. Section 15(b) of the Act, 33 U.S.C.A. § 915(b), provides that "no agreement by an employee to waive his right to compensation under this chapter shall be valid." As appears from the cases cited under this section the provision has been broadly administered by the courts. See for example Southern S. S. Co. v. Sheppeard, D. C., 34 F.2d 959, 961, where Judge Hutcheson observed that "certainly no agreement can be made which will change the method of compensation fixed by statute or prevent the employee from receiving at the hands of the commissioner, the award guaranteed by the statute." It is the duty of the deputy commissioner to administer the Act as written and judicially construed, stipulations of the parties to the contrary notwithstanding.[2]

---

[1] "Except as otherwise provided in this chapter, the average weekly wage of the injured employee at the time of the injury shall be taken as the basis upon which to compute compensation and shall be determined as follows:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed.

"(b) If the injured employee shall not have worked in such employment during substantially the whole of such year, his average annual earnings shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in similar employment in the same or a neighboring place shall have earned in such employment during the days when so employed.

"(c) If either of the foregoing methods of arriving at the annual average earnings of an injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the injury." 33 U.S.C.A. § 910. Amendments were made to these provisions in the Act of June 24, 1948, 62 Stat. 603.

[2] The answer filed in the court below was not signed by Deputy Commissioner Pillsbury. We gather that a difference of opinion existed between him and the assistant United States attorney, who signed the answer, concerning the binding nature of the stipulation. On oral argument here counsel representing the United States attorney's office conceded that the stipulation was not binding. No purpose other than further injurious delay would be served by returning the case to the Commissioner.

Under subdivision (c) actual earnings are not controlling, the conclusion to be arrived at being a sum which "shall reasonably represent the annual earning capacity" of the employee. Cf. Gunther v. United States Employees' Compensation Commission, 9 Cir., 41 F.2d 151, 154. We are not able to say that the figure arrived at here is against law or unjustified by the record. We may add that Commissioner Pillsbury offered appellants the opportunity to present further evidence in the event counsel felt that they had been taken by surprise. Counsel, however, made no request for a further hearing.

Several other points are argued but they are unworthy of notice.

Affirmed.

DENMAN, Chief Judge (dissenting).

The court's opinion fails to mention the significant admissions and prayers of Pillsbury's answer to the complaint below and second answer to the motion for summary judgment asking that the case be resubmitted to him "to make a new finding with reference to the deceased's average weekly wage and to adjust the amounts of the awards accordingly."

It is apparent that Pillsbury either had not applied the right formula or, if the correct formula, that he had improperly calculated the wage. These unconsidered admissions and prayers of Pillsbury's two answers are:

"Further answering the libel the respondent deputy commissioner avers that as shown by the transcript of testimony taken before Deputy Commissioner Henderson on June 4, 1946, and July 16, 1946, *the findings of fact in the compensation order complained of except the finding that the deceased's average weekly wage exceeded $37.50, are supported by evidence* and under the law such findings are final and conclusive and not subject to judicial review * * *." (Emphasis supplied.)

"Wherefore, this respondent prays that judgment be entered herein remanding the case to the respondent, Deputy Commissioner Pillsbury, *to make a new finding with reference to the deceased's average weekly wage at the time of his injury, and to adjust the amounts of the awards ac-* *cordingly, and that the compensation order in all other respects be affirmed and that the libel be dismissed.* [Emphasis supplied.]

"/s/ JAMES M. CARTER
United States Attorney
"/s/ CLYDE C. DOWNING
Assistant United States Attorney,
Attorneys for Respondent Pillsbury."

I do not agree with the court's opinion that Pillsbury did not decide the case, erroneously, under section (a) of 33 U.S.C. A. § 910, providing:

"(a) If the injured employee shall have worked in the employment in which he was working at the time of the injury, whether for the same or another employer, during substantially the whole of the year immediately preceding his injury, his average annual earnings shall consist of three hundred times the average daily wage or salary which he shall have earned in such employment during the days when so employed."

It seems certain that he committed this error because the average found of $37.50 is reached by dividing his total wage by the actual time Johnson worked. The error arises from the omission from the time divisor of the intervening periods of unemployment.

That the court's opinion errs in holding that what Pillsbury did was to apply section (c) is equally apparent. This formula is to be applied only when the deceased's average wage cannot be determined by the deceased's earnings divided by a divisor of formulae (a) and (b). Formula (c) then requires the consideration not only of the deceased's previous earnings but also those "of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality."

The record shows that no evidence was taken by Pillsbury of any such other employee of the designated class.

It is error not only not to mention the admissions and prayers of Pillsbury's two answers below but, even more important, not to grant the prayer and return the case to him to correct his admitted error.

The judgment of the district court should be reversed.