Freddie Joe WELCH and Paul L. Tugwell, Appellants,

v.

Gerald B. LEAVEY, Deputy Commissioner, et al., Appellees.

No. 24082.

United States Court of Appeals
Fifth Circuit.

July 10, 1968.

Rehearing Denied Aug. 21, 1968.

W. Jiles Roberts, Houston, Tex., for appellants.

James R. Gough, Asst. U. S. Atty., Houston, Tex., Alfred H. Myers, Atty., Dept. of Justice, Morton L. Susman, U. S. Atty., Jack Shepherd, Carl Walker, Asst. U. S. Attys., Houston, Tex., Charles Donahue, Solicitor of Labor, Arthur Bolstein, Attys., U. S. Dept. of Labor, for appellees Leavey and Shea.

Royston, Hayzor & Cook, E. D. Vickery, Gus A. Schill, Jr., Ben L. Reynolds, Houston, Tex., for appellees Atlantic & Gulf Stevedores, Inc., Young & Co. of Houston, and Texas Employers' Ins. Assn.

Before JONES, WISDOM and THORNBERRY, Circuit Judges.

THORNBERRY, Circuit Judge.

In these consolidated appeals, two longshoremen challenge the adequacy of the Commissioner's compensation award. 33 U.S.C. § 901 et seq. The case concerns the procedure that must be followed by the Commissioner in a partial-disability case in computing the impact of the injury on the worker's wage-earning capacity and the findings that must be made.

Appellant Tugwell was injured on July 12, 1958 when he slipped and fell while working on a ship. The Commissioner determined that as a result of the fall Tugwell suffered permanent-partial disability from an injury to the lower back.[1] He received a compensation award of $844.20 for the period from July 1 to November 1, 1958; however, his claim for continuing compensation was denied. It was shown that Tugwell was promoted to a walking foreman after his injury and that his after-injury wages were considerably higher than his pre-injury wages. Based on this fact and the medical testimony, the Commissioner concluded that appellant suffered no economic loss after November 1, 1958. He specifically found that appellant's record of substantially increased earnings and his positively demonstrated ability to earn higher wages indicated that he suffered no loss of earning capacity after that date.

Appellant Welch's injury occurred on November 24, 1961 when he slipped on some fertilizer and at the same time was struck by a load being swung by a crane which knocked him to the floor. He suffered a back injury from this mishap, but continued to work though he was partially disabled until May 30, 1963. The Commissioner concluded that although Welch was partially and permanently disabled he suffered no loss of earning capacity after May 30, 1963:

In consideration, therefore, of the claimant's demonstrated ability to earn wages during a substantial period of his disability, which were equal to or in excess of his average weekly wage prior to his injuries, and considering the degree or percentage of his physical impairment, his usual employment and other factors and circumstances which might affect his capacity to earn wages in his disabled condition, including the effect of such disability as it

---

1. We reach Tugwell's compensation claim because we have determined in a companion case that he is not barred by collateral estoppel from seeking compensation under the Longshoremen's Act. See Young & Company v. Shea, 5th Cir. 1968, 397 F.2d 185.

may naturally be expected to extend into the future, it is determined that the claimant suffered no loss of wage-earning capacity subsequent to May 30, 1963, as a consequence of his injury of November 24, 1961.

Appellants contend that the Commissioner erred in failing to award compensation after these dates. We are convinced, however, that there is substantial evidence to support the holding that although Tugwell and Welch suffered permanent impairments from their injuries, they suffered no disability within the economic purview of the Longshoremen's Act after the dates set by the Commissioner.

In cases of permanent-partial disability, the statute dictates that for non-specific-member loss, the wage-earning capacity of the worker shall be the basis upon which compensation is awarded. Thus 33 U.S.C. § 908(c) (21) is controlling:

> (21) Other Cases: In all other cases in this class of disability (permanent and partial) the compensation shall be 66⅔ percentum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest.

The Commissioner determines "wage-earning capacity" by following section 908(h) of the Longshoremen's Act:

> The wage-earning capacity of an injured employee * * * shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity; provided, however, That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may,

in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of the injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition including the effect of disability as it may naturally extend into the future.

It is well settled that this statutory framework commands the Commissioner to translate disability in a medical sense into economic disability within the meaning of the Act. Williams v. Donovan, E. D.La.1964, 234 F.Supp. 135, aff'd 5 Cir., 367 F.2d 825.

Appellants contend that when the Commissioner found they were partially and permanently disabled, he was required to enter an order providing for permanent compensation payments. Their position is spurious. The Commissioner cannot find that permanent physical disability has resulted in permanent economic disability unless he concludes that wage-earning capacity will always be adversely affected by the physical impairment. Stated differently, the statute does not allow an award for permanent-partial disability, aside from scheduled disabilities, unless there has been a loss of wage-earning capacity. This can be seen in the statutory definition of "disability"; "incapacity because of injury to earn [thereafter] the wages which the employee was receiving at the time of injury." 33 U.S.C. § 902(10); Miller v. O'Hearne, D. Maryland 1960, 181 F.Supp. 105, 107.

Appellant's second attack on the compensation award seems to be that though wage-earning capacity is relevant, the present order is not in accordance with law because the Commissioner employed an improper standard in determining their capacity. They argue that the Commissioner found no decrease in working capacity solely because after-injury

wages were higher. As will be seen, it is only to the finding on Tugwell's claim that this objection is pertinent. As to Tugwell, the Commissioner found that as a consequence of his record of substantially increased earnings since November 2, 1958 and in view of his positively demonstrated ability to earn wages in excess of his average weekly wage prior to injury, he sustained no loss of wage-earning capacity after November 1, 1958. Appellants say the Commissioner applied an improper standard under Burley Welding Works v. Lawson, 5th Cir. 1944, 141 F.2d 964. There we remarked that an "employee who has sustained a permanent or temporary partial disability and who returns to work at the same or higher wages nevertheless may be entitled to compensation if he has sustained a decrease in 'wage-earning capacity.'" Id. at 966.

Examination of Section 908(h) confirms that *Burley* is inapposite. The statutory scheme shows that the Commissioner is to base his finding of wage-earning capacity on the employee's subsequent wage record unless he determines that these actual earnings do not fairly and reasonably represent wage-earning capacity. All *Burley* adds to this statutory guideline is that these higher wages are not always determinative. See California Ship Service Co. v. Pillsbury, 9th Cir. 1949, 175 F.2d 873, 877; Bethlehem Steel Company, Inc., Shipbuilding Division v. Traynor, D. Maryland 1965, 239 F.Supp. 749. The rule-of-thumb for the Commissioner is therefore that "while [the] employee's wage-earning capacity is normally determined by his actual earnings, this is by no means necessarily so." Travelers Insurance Co. v. McLellan, 2d Cir. 1961, 288 F.2d 250, 251. This rule also comports with the purpose of section 908 (h) which is to allow the Commissioner to consider other factors besides subsequent wages in situations where the employee had no actual earnings after injury or his actual earnings did not reflect his capacity. But since these wages are clearly the most concrete data in the compensation calculus, there are strong practical reasons for having the Commissioner begin his analysis with them. After examining the record and noting that the Commissioner spoke in terms of "ability to earn wages," we are persuaded that he focused on the capacity issue and merely used the wages as a guideline. We have found only one decision to the effect that the comparison of earnings before and after injury is not particularly significant. There the court was convinced that the injury would adversely affect the worker's future employment possibilities. See Lawrence v. Norfolk Dredging Co., 4th Cir. 1963, 319 F.2d 805. Surely Tugwell's promotion and his increase in salary from $10,790.-41 in 1959 to $14,926.99 in 1964 negate that possibility here. Appellants' only rebuttal is that if the Commissioner considered post-injury wages reflective of Tugwell's earning capacity, he should have entered a specific finding that these wages were a fair and reasonable indication of this capacity. Because we are convinced that the only reasonable inference which can be drawn from the findings is that the Commissioner considered the actual wages as fairly and reasonably representative of Tugwell's wage-earning capacity, we can find no reversible error in the failure to make findings in the language urged by appellants. Cf. Alexander v. Leavey, 5th Cir. 1966, 370 F.2d 536, 537.

Finally, the wording of the finding as to Welch renders these arguments about standards for computing capacity inapplicable. The Commissioner considered all the factors enumerated in section 908 (h) and clearly held that Welch suffered no loss of wage-earning capacity from his injury.

Affirmed.