UNITED FRUIT CO. v. CARDILLO, Deputy Com'r, U. S. Department of Labor.

United States District Court
S. D. New York.
April 21, 1952.

Eugene F. Russell, Jr., New York City, for plaintiff.

Myles J. Lane, U. S. Atty., New York City (Amos E. Bowman, New York City, of counsel), for defendant.

WEINFELD, District Judge.

These are cross-motions for summary judgment in an action commenced by the plaintiff, a qualified self-insurer, to review and set aside an order of the Deputy Commissioner, United States Department of Labor, to the extent that such order awarded the sum of $20 per week for temporary partial disability to the claimant, the injured employee. 33 U.S.C.A. 901 et seq.

The employee, a longshoreman, while engaged in unloading bags of coffee aboard the employer's vessel, was injured on March 22nd, 1949. He sustained fractures of two ribs, contusions of the back and laceration of his right eyelid, with unconsciousness. He was disabled until June 19th, 1949, and again from July 23rd to September 9th, 1949. Compensation was paid for such total disability and also for facial disfigurement. No issue is raised by the employer as to these items.

The compensation order also awarded claimant $20 per week for temporary partial disability for the period from September 10th, 1949, the date he resumed work, to December 8th, 1950, and directed the employer, beginning December 9th, 1950, to make like payments during the continuance of such temporary partial disability.

The Deputy Commissioner found that the claimant "is unable to perform the duties which he performed at the time of the injury by reason of a mild cerebral post-concussional state and an anxiety neurosis resulting from the injury." The employer does not contest this finding. Moreover, it concedes that the claimant is entitled to some compensation for partial disability. What is under attack is the amount of loss of wage earning capacity—specifically, the finding by the Deputy Commissioner that the claimant is entitled to "two thirds the difference between his average weekly wage of $71.62 at the time of injury and his reduced weekly earnings of $41.62." Thus, the issue is narrowly confined to whether sufficient evidence upon the entire record supports the finding that the true wage earning capacity of the claimant, by reason of his temporary partial disability, was reduced by $30 per week.

Certain principles are well established in a review of an administrative order. The findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole.[1] The findings of fact of the Deputy Commissioner must be presumed to be correct.[2] The burden to show lack of sub-

1. O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual Company, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Parker, Deputy Commissioner v. Motor Boat Sales, Inc., 314 U.S. 244, 62 S.Ct. 221, 86 L.Ed. 184; C. F. Lytle Co. v. Whipple, Deputy Commissioner, 9 Cir., 156 F.2d 155.

2. Anderson v. Hoage, 63 App.D.C. 169, 70 F.2d 773; Luckenbach S. S. Co., Inc., v. Norton, 3 Cir., 96 F.2d 764.

stantial evidence to support the order is upon the plaintiff.[3] Mindful of these guiding principles, the Court has carefully reviewed the testimony and the record and fails to find any evidence to sustain the finding that the claimant's wage earning capacity in the open labor market had decreased by $30 per week, upon the basis of which the award of $20 per week was made (two-thirds of $30). 33 U.S.C.A. § 908(e).

Upon claimant's return to work on September 10th, 1949, he was given lighter employment as a "string piece man"—one who hooks and unhooks draughts of cargo during the loading and discharging of vessels. His prior duties as a longshoreman required him to lift weights up to 125 pounds and to climb 30 to 40 foot ladders, which work he was no longer able to perform. There is evidence that he now earns less than he did before his injury and a further claim that he is unable to work with his gang for other companies when work with his employer, the United Fruit Company, slackens. Claimant testified that previously he worked together with fellow members of his gang for other concerns when such conditions prevailed.

The payroll records for the year prior to his injury show that the employee earned from January 2nd, 1948 through and including January 2nd, 1949, $3,724.66, of which only $46.15 was earned from outside work. In the 53 week period subsequent to his return to duty, his earnings with the plaintiff-employer amounted to $3,568.28, an actual monetary loss of $156.-38. During this period, the evidence established that claimant again worked steadily with his gang and averaged within a few dollars the same earnings as the other members.

The true earning capacity is the ultimate fact issue to be determined. Wages received after disability, while evidence of earning capacity, are not conclusive one way or the other. The fact that the employer favored the claimant, assigning lighter work, and continued to pay him a longshoreman's rate, does not establish that his wage earning capacity was not diminished by reason of his injury. Ability to earn, rather than wages received, is normally the test.[4]

In this case the Deputy Commissioner has found, notwithstanding actual earnings of claimant in the year following the accident, that he "suffered a loss in wage earning capacity equivalent to $30 per week." It is emphasized by the further finding that claimant is entitled to "two-thirds the difference between his average weekly wage of $71.62 at the time of injury and his *reduced* weekly earnings of $41.62." (Emphasis supplied.)

Necessarily implicit in these findings, although not stated, is that the wages earned by the claimant after the accident do not fairly and reasonably represent his true wage earning capacity. See Burley Welding Works, Inc., v. Lawson, supra. Section 8(h) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 908(h), provides that in instances where an employee's "actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances * * * which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

The Government, conceding that no evidence was presented that the amount of decreased earning capacity was $30 per week, relies upon the foregoing section to uphold the finding.

3. Southern Stevedoring Co. v. Henderson, Deputy Commissioner, 5 Cir., 175 F.2d 863; Grant v. Marshall, D.C., 56 F.2d 654; Burley Welding Works, Inc., v. Lawson, 5 Cir., 141 F.2d 964.

4. Candado Stevedoring Corp. v. Locke, 2 Cir., 63 F.2d 802; Flores v. Bay Ridge Operating Co., 2 Cir., 131 F.2d 310; Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir., 103 F.2d 513, 515; Luckenbach S. S. Co., Inc., v. Norton, supra; Hartford Accident & Indemnity Co. v. Hoage, 66 App.D.C. 160, 85 F.2d 417, 420.

Recognizing the broad powers so granted to the Deputy Commissioner, and acknowledging that there is no requirement that the diminution of earning capacity be established with mathematical certainty, I do not understand that the quoted provision is a substitute for some evidence in the record from which the reviewing Court may determine that the finding was based upon the essential elements necessary to uphold the administrative order. Had the award been $30, or even $40 per week, instead of $20 per week as reflecting two-thirds of the reduction in earning capacity, there would be as little, or as much, in the record to uphold it as there is to sustain the present award.

The finding by the Deputy Commissioner means either that claimant's services as a string piece man commanded in the competitive labor market only $41.62, or, alternatively, that he was deprived of an additional $1,500 per annum over what he had earned and that this was the amount that longshoremen generally, or specifically those of his own work gang, were capable of earning in the open labor market. But the record is barren of any evidence to support either conclusion. Proof is lacking as to the market or wage rates for a string piece man, and also that in the period subsequent to his injuries any of the longshoremen did earn, or was there a market in which to earn, additional compensation. On the contrary, the proof is to the effect that they earned little more than the claimant—and the slight difference may well account for the days he was unable to work due to temporary partial disability.

 The wage earning capacity of a temporarily disabled claimant may be tested by an assumption that his present employer would dispense with his services, requiring the claimant to secure employment in a competitive labor market. When this is established by evidence there is basis upon which to calculate the loss differential in wages or the reduced earning capacity of the claimant. And it is not necessary to make such a finding with mathematical exactitude.

Whether we proceed on the theory that as a string piece man, a work he was capable of performing in his impaired condition, he commanded only $41.62 as the fair market measure of his earning capacity or that there was loss of opportunity of outside earnings by reason of his disabled condition, the result is the same. There is no evidence to support either theory.

It may well be that the Deputy Commissioner took into account factors as to wage rates and other market conditions, as well as the items permitted under Section 908(h), but if so, this is not revealed and the Court may not speculate that this was done.

 The employer, as already noted, concedes that claimant is entitled to some compensation for partial disability. The matter is remanded to the Deputy Commissioner for further testimony and findings.[5]

Settle order on notice.

---

5. Regal Knitwear Co. v. National Labor Relations Board, 324 U.S. 9, 13, 65 S. Ct. 478, 89 L.Ed. 661; United States v. Jones, 336 U.S. 641, 671, 69 S.Ct. 787, 93 L.Ed. 938; Luckenbach S. S. Co., Inc., v. Norton, D.C., 41 F.Supp. 105.