**LUMBER MUTUAL CASUALTY INSUR-
ANCE COMPANY, Plaintiff-Appellee,**

v.

**Denis B. O'KEEFFE, as Deputy Commis-
sioner, Second Compensation District,
Bureau of Employees' Compensation,
Defendant-Appellant.**

No. 51, Docket 23122.

United States Court of Appeals,
Second Circuit.

Argued Nov. 4, 1954.

Decided Dec. 16, 1954.

Alexander & Ash, New York City (Sidney A. Schwartz, New York City, of counsel), for plaintiff-appellee.

Warren E. Burger, Asst. Atty. Gen., Leonard P. Moore, U. S. Atty., Brooklyn, N. Y. (Paul A. Sweeney and Morton Hollander, Attys., Dept. of Justice, Washington, D. C., of counsel), for defendant-appellant.

Before CHASE, MEDINA and HINCKS, Circuit Judges.

HINCKS, Circuit Judge.

This appeal is from an order of the court below granting plaintiff-appellee's (Lumber Mutual Casualty Insurance Company) motion for summary judgment, D.C., 117 F.Supp. 876, 879. The effect of the order was to set aside a compensation award for an injured employee made by the defendant-appellant, the Deputy Commissioner, under the Longshoremen's and Harbor Workers' Act, 44 Stat. 1424, as amended, 33 U.S. C.A. § 901 et seq. (hereinafter referred to as the "Act"). The order also permanently enjoins the enforcement of the award.

The pertinent facts of this case are as follows: Aarne Sinkkila, the claimant before the Deputy Commissioner, sustained a back injury on August 16, 1944, while in the employ of the Brewer Dry Dock Company as a carpenter. That the injury was incurred in the course of claimant's regular employment is not disputed. Sinkkila had injured his back on several occasions prior to August 16, 1944, but there is substantial evidence in the record to support the Commissioner's finding that the crucial injury and the one resulting in the impairment complained of was due to the accident on the above date.

The resulting injury to claimant's spinal disc caused a total disability from August 17, 1944 to September 17, 1944. During this period the claimant was entirely unable to work and for this period the Deputy Commissioner ordered an award of $114.29. This portion of the Commissioner's ruling was not disputed below and is not before us.

The claimant thereafter found that he was unable to get work as a heavy duty carpenter around New York City because prospective employers were reluctant to hire him on discovering that his injury not only restricted him but re-

quired him to wear a canvass or steel belt. The claimant went to Florida in search of employment. While in Florida he was able to obtain work as a carpenter and as a superintendent of carpenters. He was thus engaged for a period of eight years until finally he was forced, due to his injury, to stop working completely. For the eight years of work in Florida his annual wages were in excess of his pre-injury earnings. The medical testimony established that the back injury 'caused a permanent and partial disability of at least 25%. The Deputy Commissioner, on grounds to be developed later, made an award of $15 per week for the eight-year period after the accident, such award to continue until the disability should cease, unless otherwise ordered. The court below set aside the award on the ground that the Act requires that post-injury wage-earning capacity be determined by comparison of the actual wages earned by the claimant and those earned by other laborers in the same labor market, the so-called "open labor market" test. Finding that there was no evidence on this point, the court concluded that the award was based on conjecture and was not supported by substantial evidence in the record. This we think was error.

■ Section 8(c)(21) of the Act provides that compensation in cases of permanent and partial disability shall be 66-2/3 of the difference between claimant's average pre-injury earnings and his post-injury wage-earning capacity. Under this formula no award can be made until the post-injury wage-earning capacity is found by the Deputy Commissioner, and as to this the cases uniformly hold that the key factor is the claimant's *ability to earn* and not his *actual wages*, though this latter factor is of course of some significance in the general determination. See Candado Stevedoring Corp. v. Locke, 2 Cir., 63 F.2d 802; Flores v. Bay Ridge Operating Co., 2 Cir., 131 F.2d 310; Twin Harbor Stevedoring & Tug Co. v. Marshall, 9 Cir., 103 F.2d 513; United Fruit Co. v. Cardillo, D.C.S.D.N.Y., 104 F.Supp. 81.

The major problem then is to determine the claimant's wage-earning capacity after the injury. In this respect Section 8(h) of the Act is important. This section provides that post-injury wage-earning capacity in partial disability cases is to be determined by the claimant's *actual earnings* if such earnings fairly and reasonably represent his wage-earning capacity. But 8(h) also has the following proviso:

"That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

■ It seems clear from the above that a claimant may be entitled to compensation even though, during the period for which compensation is claimed, his actual earnings were in excess of his pre-injury wages. And nowhere does the statute refer to the "open labor market" test deemed so important by the court below. The court below found sanction for this test from the opinion of the District Court in United Engineering Co. v. Pillsbury, D.C.N.D.Cal.S.D., 92 F.Supp. 898. It is not wholly clear that the trial court in the Pillsbury case construed the test as did the court below. Moreover, we note that the test was not expressly approved on appeal, 9 Cir., 187 F.2d 987; Id., 342 U.S. 197, 72 S.Ct. 223, 96 L.Ed. 225. Reliance is also placed on Judge A. Hand's opinion in the Candado case, supra. But scrutiny of that decision discloses no reference to such a test. The test is stated in 149 A.L.R. 417, but this annotation is not concerned specifically with this particu-

lar Act, and, moreover, the portion thereof quoted in the opinion below represents only the editor's views as to what the law generally should be. Such a test raises serious problems, and though, as we shall note later, it may be a useful guide in some circumstances, under the controlling Act certainly it is not the sole criterion.

■ One of the major issues in this case has received little attention so far in these proceedings. The Deputy Commissioner found that the claimant's actual earnings after his injury did not fairly and reasonably represent his post-injury *earning capacity*. Such a finding, under Section 8(h), was a prerequisite to an award based on the factors specifically enumerated in the proviso to 8(h). It does not appear on what basis this preliminary finding was made and the question as to whether it is supported by substantial evidence is particularly difficult since the statute does not define the factors upon which such a finding must rest.

■ However, there was credible evidence of pain suffered by the claimant during the post-injury period plus total disability for a time; that claimant was forced during that period to do mostly light work which was possible through the cooperation of a fellow workman, or team-mate, who on given tasks did the heavy work; and that claimant was forced to quit work frequently because of his injury. This we think was sufficient basis for the finding that post-injury earnings did not fairly represent post-injury wage-earning *capacity*.

■ Having properly found that claimant's post-injury earnings did not fairly represent his earning capacity, the Deputy Commissioner became authorized to make an award reflecting those factors stated in the proviso to Section 8(h) of the Act; viz., the nature of the injury, the degree of physical impairment, the claimant's usual employment, and the effect of the disability in terms of claimant's future. Viewing the record as a whole, we think that there was substantial evidence to support the Commissioner's finding that the claimant's post-injury earning capacity was $60.50 per week. It was not disputed that the pre-injury earnings were $83 per week. The award of $15 per week was two-thirds of the difference between these two figures and thus satisfied the mathematical formula of the Act.

■ The fact that post-injury earnings in Florida exceeded pre-injury earnings in New York did not necessarily negate a loss of earning capacity. On the evidence it is at least equally reasonable to attribute the greater earnings in the post-injury period to a higher rate of pay in Florida than in New York. If the "open labor market test" is to be applied at all, the only comparison which is pertinent here should be between the wage scale prevailing in New York during the post-injury period and the claimant's pre-injury earnings in the New York market. If there had been evidence that the New York labor market in the post-injury period was such that the plaintiff, notwithstanding his injury, could have earned more in New York after his injury than before, doubtless that would have been a factor to which the Commissioner should have given consideration. But there was no such evidence in this record and its absence, under the Act, was not fatal.

■ Having thus satisfied ourselves that there was substantial evidence to support the award, our appellate function is exhausted. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Cardillo v. Liberty Mutual Insurance Company, 330 U.S. 469, 67 S.Ct. 801, 91 L.Ed. 1028; Gooding v. Willard, 2 Cir., 209 F.2d 913. We can only conclude that the order below was erroneous.

Reversed.