Galli, Terhune, Gibbons & Mulvehill, New York City, Urban Mulvehill, New York City, of counsel, for plaintiffs.

Cornelius W. Wickersham, Jr., U. S. Atty., by Malvern Hill, Jr., Asst. U. S. Atty., Brooklyn, N. Y., for defendant.

**TRAVELERS INSURANCE COMPANY and Bush Terminal Railroad Company, Plaintiffs,**

v.

**John D. McLELLAN, Jr., Deputy Commissioner, Federal Security Agency, Bureau of Employees' Compensation, Second Compensation District, Defendant.**

Civ. No. 20064.

United States District Court
E. D. New York.

May 16, 1960.

ZAVATT, District Judge.

This is an action by an employer and its insurance carrier to stay and set aside part of a "compensation order" made by the defendant pursuant to applicable provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S. C.A. §§ 901–950. Section 921 gives this court jurisdiction to entertain this action. The award that is under review, for such is the essence of this proceeding, was made to one Lars Hellberg for a back injury sustained by him while in the employ of the plaintiff Bush Terminal Railroad Company. The Deputy Commissioner, defendant in this action, moves for summary judgment.

The facts and the compensation consequences are these: Since 1936 the claimant Hellberg has been employed by Bush as a maintenance man doing mostly carpentry work. On January 4, 1956, while working aboard a car-float in the Brooklyn harbor he suffered "an acute lumbo-sacral strain" when he attempted to lift a heavy pump by himself. He nevertheless continued to work from that date until January 13, 1956, at which time the pain and discomfort became such that he was unable to continue.

The Deputy Commissioner found the claimant to be "temporarily totally disabled" from January 13, 1956, until February 24, 1956, when the claimant returned to work with the aid of a back

brace. The Deputy Commissioner awarded the claimant $210 for this period, based on his "average weekly wages" of $84.53 at the time of the accident and the formula found in 33 U.S.C.A. § 908(b). The plaintiffs have paid this amount and do not question the propriety of this part of the compensation order.

The claimant worked with the aid of this brace from February 24, 1956, until April 25, 1956, at which time he entered the hospital to undergo corrective surgery to fuse the lower portion of his spine. During this last nine-week period the claimant was paid his full weekly salary, which, at the hourly rate then in effect, was $89.60. Nevertheless, the Deputy Commissioner found that the claimant was "temporarily partially disabled" and that his "wage-earning capacity" during this period was only $65. By application of the formula found in 33 U.S.C.A. § 908(e) the claimant was awarded $115.32. This sum has been paid and is not questioned.

The claimant's period of convalescence lasted until November 24, 1957, when he again returned to work. For this 83 week period of "temporary total disability" the claimant was awarded $2,890 in conformity with the statutory formula, 33 U.S.C.A. § 908(b). Most of this has been paid and the award is not questioned.

The disagreement concerns the final part of the award covering the period after November 25, 1957, when the claimant was back at work. The Deputy Commissioner found these facts:

"[T]hat the claimant returned to employment on November 25, 1957, such employment consisting of the same job as he held on the date of the injury; that the basic pay rate of that job had increased, in conformity with general increases of pay in the industry; that the claimant earns more now than his average weeky wage at the time of the injury, [$98.40 as contrasted with $84.53], but his present earnings are not truly representative of his earning capacity; that as a result of his injury the claimant was permanently partially disabled from November 25, 1957, to July 30, 1959, inclusive, on which date he was still disabled, that considering the nature and extent of his injury, the claimant had an earning capacity of $70.00 a week during such period, which is reasonable, and he is entitled to 87⅜ weeks' compensation, at $9.69 a week, in the sum of $848.57, for such permanent partial disability. * * * *"

The employer was ordered to pay the claimant $9.69 a week "until disability shall have ceased, or until otherwise directed."

The ultimate issue on this motion concerns the claimant's "wage-earning capacity" and, more specifically, whether there is sufficient evidence in the record to support the Deputy Commissioner's findings in this regard. See O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U. S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Universal Camera Corp. v. N. L. R. B., 1951, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. The pertinent section of the act, 33 U.S. C.A. § 908(h), reads:

"The wage-earning capacity of an injured employee in cases of [permanent] partial disability * * * shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: *Provided, however,* That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."

**16**

The Deputy Commissioner made the preliminary finding, already quoted, that the claimant's earnings do not represent his capacity, and he therefore fixed a "reasonable" capacity. However:

"it does not appear on what basis this preliminary finding was made and the question as to whether it is supported by substantial evidence is particularly difficult since the statute does not define the factors upon which such a finding must rest."

That was said in Lumber Mutual Casualty Ins. Co. v. O'Keeffe, 2 Cir., 1954, 217 F.2d 720, 723, a case presenting certain surface similarities [1] to the instant case, and the case upon which the Deputy Commissioner heavily relies on this motion for summary judgment.

In sustaining the Deputy Commissioner's award the court in the O'Keeffe case pointed to these factors:

"[T]here was credible evidence of pain suffered by the claimant during the post-injury period plus total disability for a time; that claimant was forced during that period to do mostly light work which was possible through the cooperation of a fellow workman, or teammate, who on given tasks did the heavy work; and that claimant was forced to quit work frequently because of his injury. This we think was sufficient

basis for the finding that post-injury earnings did not fairly represent post-injury wage-earning *capacity*."

Here, too, there is evidence that the claimant continues to experience some pain and discomfort and is required to wear a brace.[2] It is, of course, indisputable, that he was totally disabled for a time. But there the similarity between the cases ends. For although the claimant in this case has a permanent impairment that restricts his ability to bend and execute certain other movements and motions that require freedom in the joints of the lumbo-sacral vertebrae,[3] there is no evidence that he is unable to perform any assignment within the scope of his employment and training that he was able to do before his injury.

The questioning of the claimant at the hearing centered on his ability to move or lift heavy objects. The claimant's testimony was that if he had a job to do that was too heavy for him he called a partner to help him, but that this was the same procedure that the claimant generally followed before his injury.[4] It was not specifically developed whether there are more jobs now that are too heavy for the claimant alone or that jobs that he once did by himself now require help, but the claimant did admit that since returning to work he has never refused to do any work.[5] He

1. In O'Keeffe, the claimant after his injury "was unable to get work as a heavy duty carpenter around New York City because prospective employers were reluctant to hire him on discovering that his injury not only restricted him but required him to wear a canvas or steel belt." He therefore went to Florida where he worked for eight years at a wage higher than the one he had received in New York before his injury. However, he was finally forced "due to his injury, to stop working completely." 217 F.2d at pages 721–722.

2. The testimony is not completely clear as to whether the claimant wears the brace continuously or only when he feels particular need of it.

3. The weight of the medical evidence is that the operation was medically a success and that no further treatment is nec-

essary. The loss of movement resulting from the fusion was characterized in various terms, both quantitative and qualitative, but for descriptive purposes here, the loss was not more than moderate.

4. The claimant sustained his original injury when he tried to move a heavy pump by himself because his partner was called aside to help another workman.

5. The claimant also testified that his employer refused to rehire him on a light duty basis although the claimant had a letter from his doctor. The Deputy Commissioner specifically found that the claimant returned to his old job which requires both light and heavy work. Therefore the testimony and conclusions of Dr. Urdang, the claimant's examining physician, that the claimant would be unable to do the work he had done be-

also testified in May, 1959, that since he had returned in November 1957 he had not lost any time from work because of sickness or flare-ups of his injury. His wage record for the period December 1957 through April 1958 and his W–2 statement for the year 1958 confirm this fact.

The conclusion seems inescapable to me that unless this permanent impairment by itself requires a finding of reduced earning capacity as a matter of law, even though there is an increase in actual earnings, there is no basis in the record for the Deputy Commissioner's award. Even the most liberal reading of the act negatives such a view, as does the O'Keeffe case itself.[6]

The recent case of Moore McCormack Lines, Inc. v. Quigley, D.C.S.D.N.Y.1959, 178 F.Supp. 837, which is almost factually identical to the instant case, supports me in this conclusion.[7] The eventual disposition in the Quigley case was a re-mand to the Deputy Commissioner for further testimony and findings on the authority of United Fruit Co. v. Cardillo, D.C.S.D.N.Y.1952, 104 F.Supp. 81. Without doubting the power of this court to remand for that reason, it seems to me that no useful purpose would be served in doing so here.[8] There is no lack of pertinent evidence, either medical or occupational. All that is required is to apply the law to the facts, and having done so I find that the evidence compels the conclusion that the claimant's actual earnings adequately represent his wage-earning capacity, so that any further award is impermissible after November 24, 1957, for permanent partial disability.[9] The defendant's motion for summary judgment is therefore denied.

Although the plaintiffs have not cross-moved for summary judgment, I will grant them judgment as prayed for in their complaint. In a proceeding of this nature there are only questions of law

---

fore his injury are undercut since part of Dr. Urdang's diagnosis was based on the erroneous assumption that the claimant returned to work as a supervisor and not as a laborer.

6. A final quotation from the O'Keeffe case emphasizes this aspect:

"The fact that post-injury earnings in Florida exceeded pre-injury earnings in New York did not necessarily negate a loss of earning capacity * * *. If there had been evidence that the New York labor market in the post-injury period was such that the [claimant], notwithstanding his injury, could have earned more in New York after his injury than before, doubtless that would have been a factor to which the Commissioner should have given consideration." 217 F.2d at page 723.

7. The only distinction between the Quigley case and the instant case is that there the claimant was a foreman and not a laborer. On the entire record, however, I think the distinction is insubstantial.

8. In the Cardillo case there was no doubt that the claimant was disabled in that his actual earnings were less after the injury than they were before. The only issue was the reasonableness of the wage-earnings capacity that the Deputy Commissioner fixed. Finding nothing in the record that enabled the court to intelligently review this determination, the court remanded the case. On the record before me the Deputy Commissioner's determination of a reasonable capacity seems equally arbitrary and if that were the only issue I, too, would remand.

9. This conclusion might be reached by an alternate route. The act defines "disability" as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." 33 U.S.C.A. § 902(10). Since the compensation payments provided in § 908 are based exclusively on the various degrees of "disability", it might follow that without "incapacity * * * to earn the wages which the employee was receiving at the time of injury" there can be no compensation. I do not base my decision on this reading of the statute for two reasons. First, I suppose that the way is still open for the Deputy Commissioner to find that actual wages are not a true measure of capacity in the § 902(10) sense, just as he is specifically called upon to make that determination in § 908(h). Second, the statute is not a model of consistency and it seems prudent to avoid a mechanical substitution of the § 902(10) definition of disability into § 908. See Lawson v. Suwanee Fruit & S.S. Co., 1949, 336 U.S. 198, 69 S.Ct. 503, 93 L. Ed. 611.

to be considered and the defendant's motion has served the function of bringing all the issues before the court. Having decided these issues for the plaintiffs there would be no purpose served in requiring them to move specially for judgment.

Settle order within ten days.