288 F.2d 250
 TRAVELERS INSURANCE COMPANY and Bush Terminal Railroad Company, Plaintiffs-Appellees,
v.
John D. McLELLAN, Jr., as Deputy Commissioner, Second Compensation District, Bureau of Employees' Compensation, Defendant-Appellant.
 No. 136.
 Docket 26438.
 United States Court of Appeals Second Circuit.
 Argued January 5, 1961.
 Decided March 21, 1961.
 
 Urban S. Mulvehill, of Galli, Terhune, Gibbons & Mulvehill, New York City, for plaintiffs-appellees.
 Morton Hollander, Department of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Department of Justice, Washington, D. C., Cornelius W. Wickersham, Jr., U. S. Atty., for the Eastern District of New York, Brooklyn, N. Y., W. Harold Bigham, Dept. of Justice, Washington. D. C., of counsel), for defendant-appellant.
 Before LUMBARD, Chief Judge, and MAGRUDER and WATERMAN, Circuit Judges.
 MAGRUDER, Circuit Judge.
 
 
 1
 This is a rather routine appeal involving the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. §§ 901-950 (hereinafter called the Act). Appellant is a deputy commissioner of the Bureau of Employees' Compensation. He issued a compensation order under the Act which the United States District Court for the Eastern District of New York has in part set aside. 184 F.Supp. 14.
 
 
 2
 Lars Hellberg, a carpenter working as a maintenance man for the Bush Terminal Railroad Company, injured his back on January 4, 1956, while engaged in his employment. He continued working for the week following the injury, but then was forced to retire for more than a month. From February 24, 1956, until April 25, 1956, Hellberg worked while wearing a back brace. On or about the latter date Hellberg entered the hospital and underwent an operation called a "spinal fusion." The operation was deemed a success and Hellberg returned to the same job at the Bush Terminal on November 25, 1957.
 
 
 3
 The workman filed a claim under the Act and a hearing was held. So much of the award of the deputy commissioner as directed the payment of compensation for the period prior to November 25, 1957, is not now in question on this appeal. In addition, the deputy commissioner's award required the payment of $9.69 a week from November 25, 1957, "until disability shall have ceased, or until otherwise ordered." Accrued sums were to be paid at once; subsequent payments were to be made in biweekly installments. The district court entered a decree for a permanent injunction "suspending and setting aside the enforcement of that part of the Deputy Commissioner's order, dated July 30, 1959, wherein it fixed an earning capacity of the claimant and ordered compensation payments based thereon to continue after November 25, 1957."
 
 
 4
 The brief by the appellees does no more than express approval of the trial court's findings and opinion. It seems to us that the trial judge unduly emphasized what was the fact, namely, that Hellberg's wages since his return to work on November 25, 1957, at the Bush Terminal were in fact in excess of his preinjury earnings.
 
 
 5
 Subsection (c) of § 908 of the Act deals with disability payments for "permanent partial disability." Subsection (c) (21), which is applicable to this case, contains the following provision:
 
 
 6
 "In all other cases in this class of disability the compensation shall be 66 2/3 per centum of the difference between his average weekly wages and his wage-earning capacity thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest."
 
 
 7
 While employee's wage-earning capacity is normally determined by his actual earnings, this is by no means necessarily so. Subsection (h) of § 908 directs that "wage-earning capacity" of an injured employee
 
 
 8
 "shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: Provided, however, That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condition, including the effect of disability as it may naturally extend into the future."
 
 The deputy commissioner found as a fact:
 
 9
 "[T]hat the claimant returned to employment on November 25, 1957, such employment consisting of the same job as he held on the date of the injury; that the basic pay rate of that job had increased, in conformity with general increases of pay in the industry; that the claimant earns more now than his average weekly wage at the time of the injury, but his present earnings are not truly representative of his earning capacity; that as a result of his injury the claimant was permanently partially disabled from November 25, 1957, to July 30, 1959, inclusive, on which date he was still disabled; that considering the nature and extent of his injury, the claimant had an earning capacity of $70.00 a week * * * which is reasonable, and he is entitled to * * * compensation, at $9.69 a week * * * for such permanent partial disability * * *."
 
 
 10
 It is conceded that an award of compensation may properly be given, under the above provision of law, even though the employee's actual earnings have not been diminished as a result of the injury, as was the case here. See Lumber Mutual Casualty Insurance Co. v. O'Keeffe, 2 Cir., 1954, 217 F.2d 720, 723. We think that the deputy commissioner's findings were supported by substantial evidence and should have been allowed by the district court to stand, in view of the limited scope of judicial review accorded in such cases. O'Leary v. Brown-Pacific-Maxon, Inc., 1951, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483; Gooding v. Willard, 2 Cir., 1954, 209 F. 2d 913.
 
 
 11
 The undisputed medical testimony of Dr. Jacob Urdang, a surgical orthopedist, was to the effect that the claimant had suffered a "permanent partial loss of use of the back and lower extremity"; that forward flexion of the trunk from the lumbo-sacral was not within normal limits, and that straight leg raising on the left was "restricted about 15 degrees." When asked if the claimant could do the work of a carpenter, despite these disabilities, the witness replied that "he could do the work almost unlimited if it didn't require bending, stooping, lifting and pulling." We can take judicial notice of the fact that the usual work of a carpenter entails "bending, stooping, lifting and pulling"; such activities, as Dr. Urdang further testified, could aggravate the claimant's injury and cause it to go into a severe disability.
 
 
 12
 Hellberg himself testified that he requested light work upon his return to the Terminal but that as no light work was available he resumed his previous task as a maintenance man rather than forfeit certain seniority rights. Hellberg also testified that since returning to work he has required assistance of a helper to perform tasks which he previously had accomplished alone. From time to time he wears a back brace to help relieve his pain. His duties require him occasionally to lift machinery of varying weights. Although it is true that the record does not contain detailed data as to exactly how many pounds one in Hellberg's line of work should be able to lift in order that he might be judged to have full wage-earning capacity, we are of the opinion that the instant record provides a sufficient basis for the deputy commissioner's conclusion that Hellberg's partial disability was of a permanent nature and in fact had impaired his wage-earning capacity. The medical evidence on the point probably could not have been made more explicit without transgressing the limitations of the art. Furthermore, as indicated, the claimant's injury could well cause some future disablement greater than that presently suffered, which is a factor that the Act directs to be taken into account in determining his "wage-earning capacity." Indeed, if the claimant were to await such aggravation before presenting his claim, he might well find the one-year limitation to be a bar. Pillsbury v. United Engineering Co., 9 Cir., 1951, 187 F.2d 987.
 
 
 13
 For these reasons we are required to vacate the judgment of the District Court.