Charles WILLIAMS, Plaintiff,

v.

P. J. DONOVAN, Deputy Commissioner Department of Labor, Bureau of Employee's Compensation of the Seventh Compensation District, Defendant, and J. P. Florio & Co., Inc., and American Mutual Liability Ins. Co., Intervenors.

Civ. A. No. 13679, Division B.

United States District Court
E. D. Louisiana,
New Orleans Division.

Oct. 1, 1964.

136

---

Frank S. Bruno, New Orleans, La., for plaintiff.

Louis C. LaCour, U. S. Atty., and Gene S. Palmisano, Asst. U. S. Atty., New Orleans, La., for defendant.

Edward P. Jerry, of Merritt & Jerry, New Orleans, La., for intervenors.

FRANK B. ELLIS, District Judge.

On December 15, 1958, the plaintiff, Charles Williams, was employed by J. P. Florio & Company as a stevedore as-

signed to the loading of the S.S. ARNEDYK as it was moored at the Third Street Wharf on the Mississippi River in New Orleans, Louisiana. While performing his duties in the hold of the vessel, plaintiff was injured by a falling bale or roll of pulp paper that struck him on his right leg in the area of the knee. In due course a formal hearing was held under the provisions of the Longshoremen's and Harbor Workers' Compensation Act [1], 33 U.S.C.A. § 901 et seq., and on July 2, 1963, the Honorable P. J. Donovan, Deputy Commissioner of the Department of Labor, issued a compensation order declaring plaintiff to have incurred a "temporary total disability" as well as a "permanent partial disability", and fixing the total compensation award at $15,706.29 less credits for sums previously paid.

Plaintiff instituted the present action against the Deputy Commissioner under Section 21(b) of the Act [2] seeking to have the compensation order set aside, the findings of the Deputy Commissioner reversed, and a judgment entered holding that plaintiff was rendered "totally and permanently disabled". Upon timely application the interventions of the employer, J. P. Florio & Company, and its compensation insurer, American Mutual Liability Insurance Co., were recognized.[3] The case is before the Court now on motions of all parties for summary judgment.

Defendant and intervenors argue that the findings of the Deputy Commissioner, especially the finding as to permanent partial disability, should not be disturbed since they are supported by substantial evidence on the record considered as a whole. Plaintiff disputes this and urges to the contrary that the same record establishes conclusively that in the legal sense he was totally and permanently disabled. The facts not being controverted, this case is ripe for summary adjudication.

In O'Leary v. Brown-Pacific-Maxon, Inc., 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951), the Supreme Court succinctly stated the rule to be applied by the courts in reviewing administrative agency findings under the Act:

"The standard, therefore, is that discussed in Universal Camera Corp. v. [National] Labor [Relations] Board ante, p. 474 [71 S.Ct. 456]. It is sufficiently described by saying that the findings are to be accepted unless they are unsupported by substantial evidence on the record considered as a whole." 340 U.S. at 508, 71 S.Ct. at 472.

This test has been consistently followed by the Fifth Circuit Court of Appeals, Miller v. Donovan, 286 F.2d 422 (1961), and by this Court, Gilbert Pacific Inc. v. Donovan, D.C., 198 F.Supp. 297 (1961).

In making his determination the Deputy Commissioner had the benefit of testimony from plaintiff's treating physician and four orthopedic surgeons, all of whom had examined plaintiff. The initial treating physician was Dr. Dabney M. Ewin, a specialist in the field of general surgery. In March of 1959 Dr. Ewin associated Dr. George D. Berkett, an orthopedic surgeon, for consultation, and in August of 1959 Dr. H. R. Soboloff, another orthopedic surgeon, began treating plaintiff. An exploratory knee operation was performed by Dr. Soboloff on February 23, 1960, at which time the articular surface of the cartilage was removed. Approximately one year later Dr. Soboloff also removed plaintiff's knee cap. Further special examinations of plaintiff were performed by Dr. Byron M. Unkauf in November, 1961, and by Dr. Santo J. LoCoco in October, 1962.

At the hearing before the Deputy Commissioner each doctor testified as to plaintiff's disability in the medical sense. Dr. Ewin estimated that there would be a "30 percent disability of the right lower extremity" which would still permit

---

1  Hereinafter referred to as the Act.

2.  33 U.S.C.A. § 921(b).

3.  Rule 24(a), Federal Rules of Civil Procedure, 28 U.S.C.A.

plaintiff to perform the duties of a hook-on man or a fork lift driver, but would preclude his employment in the holds of vessels. Dr. Soboloff also determined that plaintiff had "a 30 percent permanent disability of his leg as a result of the injury and the surgery that was necessitated by it", and enumerated other tasks that he felt plaintiff could perform as a stevedore, such as flagman and winch operator. Dr. Berkett's opinion was to the same effect, finding that the patient's "residual disability was in the neighborhood of 35 percent permanent partial disability of the lower right extremity."

Dr. Unkauf's original estimate of plaintiff's disability was "50 percent of the right lower limb", and he added that further suggested treatment could reduce that figure. However, upon seeing the operative reports of Dr. Soboloff, he set the permanent disability "in the neighborhood of 65 percent". Under similar circumstances Dr. LoCoco first determined the permanent disability to be 45 percent and then revised it to "about a 60 percent permanent disability, and that's putting it small."

■ Considering the opinions of these expert witnesses and the other evidence presented at the hearing, the Deputy Commissioner translated disability in the medical sense into disability within the meaning of the Act and made a finding that "the claimant has a permanent partial disability equivalent to 50 percent loss of use of his right leg." After weighing the matter this Court cannot say that the Deputy Commissioner's finding is unsupported by substantial evidence on the record considered as a whole, and consequently affirms that finding, especially since appellate courts have even upheld findings contrary to the weight of the medical testimony. Todd Shipyards Corp. v. Donovan, 300 F.2d 741, 742 (5 Cir. 1962). See Sentilles v. Inter-Caribbean Shipping Corp., 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142 (1959).

In the instant case the finding is clearly in accord with the weight of the medical testimony. Conversely, the Court rejects plaintiff's contention that he is totally and permanently disabled.

Plaintiff further argues that in determining the amount of compensation due and owing the Deputy Commissioner committed error by applying a wrong provision of the Act. In calculating the award incident to 50 percent permanent partial disability of the right leg, one-half the number of weeks allowable for the loss of a leg under Section 8(c)(2) of the Act [4] was multiplied by the weekly rate. This rate is not in dispute.

Instead, it is contended here that the general wage-earning capacity test defined in Section 8(h) of the Act [5] should have been applied rather than the schedule in Section 8(c). The issue presented then is whether compensation should here be calculated according to the schedule of Section 8(c), or under the provisions of the wage-earning capacity test enunciated in Section 8(h). The Court is of the opinion that the schedule controls and hence also affirms the Deputy Commissioner's method of calculation.

■ Four subdivisions of Section 8 set forth successively the compensation to be awarded for the respective classes of disability, that is, a) permanent total disability, b) temporary total disability, c) permanent partial disability, and e) temporary partial disability. Under subdivision (c) a compensation schedule is provided enumerating various permanent partial disabilities and assigning to each a certain number of weeks' compensation to be paid for that disability. In addition, a general catch-all paragraph is included to cover those types of permanent partial disabilities not specified in the other paragraphs:

"(21) Other cases: In all other cases in this class of disability the compensation shall be 66⅔ per centum of the difference between his average weekly wages and his *wage-*

---

4. 33 U.S.C.A. § 908(c)(2).

5. 33 U.S.C.A. § 908(h). See note 6.

*earning capacity* thereafter in the same employment or otherwise, payable during the continuance of such partial disability, but subject to reconsideration of the degree of such impairment by the deputy commissioner on his own motion or upon application of any party in interest." (emphasis added)

Thus it is evident that when considering compensation in a case of permanent partial disability, the form and language of the Act dictate that the wage-earning capacity test be applied only in those "other cases" not listed in the schedule. Moreover, since the term "wage-earning capacity" is not otherwise defined in the Act, that definition is provided in Section 8(h) merely as a definition and not as an alternative method of calculating scheduled compensation benefits.[6]

■ Plaintiff places reliance upon, and his argument is keyed to, the definition of "disability" in Section 2 of the Act:[7]
"(10) 'Disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment."

The contention then is urged that an application of the schedule fails to make allowance for the wage-earning capacity loss of a disabled person. However, it

has been held, and this Court fully agrees, that in passing the Act

"Congress has determined that a loss of wage-earning capacity *and its extent* are conclusively established when one of the enumerated physical impairments is proven to have arisen out of the employment." (emphasis supplied) Travelers Insurance Co. v. Cardillo, 225 F.2d 137, 144 (2 Cir. 1955) cert. den. 350 U.S. 913, 76 S.Ct. 196, 100 L.Ed. 800; Bethlehem Steel Corp. v. Cardillo, 229 F.2d 735 (2 Cir. 1956).

This indicates a legislative determination that the wage-earning capacity loss in the case of a scheduled disability shall be limited in extent to the compensation specified in the schedule, precluding this Court and the Deputy Commissioner from determining an award in any other manner. Furthermore, the only cases cited or known by the Court involving an application of the wage-earning capacity test resulted from non-scheduled injuries falling within Section 8(c) (21).[8] Consequently, the motions of defendant and intervenors for summary judgment are granted, and plaintiff's motion for summary judgment denied.

■ Lastly, the attorney for claimant, Frank S. Bruno, was allowed a fee of $300.00 for legal services in connection

---

6. The language of the subdivision bears this out:
"(h) The wage-earning capacity of an injured employee in cases of partial disability under subdivision (c) (21) of this section or under subdivision (e) of this section shall be determined by his actual earnings if such actual earnings fairly and reasonably represent his wage-earning capacity: *Provided, however,* That if the employee has no actual earnings or his actual earnings do not fairly and reasonably represent his wage-earning capacity, the deputy commissioner may, in the interest of justice, fix such wage-earning capacity as shall be reasonable, having due regard to the nature of his injury, the degree of physical impairment, his usual employment, and any other factors or circumstances in the case which may affect his capacity to earn wages in his disabled condi-

tion, including the effect of disability as it may naturally extend into the future."

7. 33 U.S.C.A. § 902.

8. See, for example, Alexander v. Meiji Kaiun K. K., 195 F.Supp. 831 (E.D.La. 1961), affirmed sub nom. Strachan Shipping Co. v. Alexander, 311 F.2d 385 (5 Cir. 1962) [lumbo sacral strain]; Burley Welding Work v. Lawson, 141 F.2d 964 (5 Cir. 1944) [back injury]; Travelers Insurance Co. v. McLellan, 288 F.2d 250 (2 Cir. 1961) [back injury]; Lumber Mutual Casualty & Ins. Co. v. O'Keefe, 217 F.2d 720 (2 Cir. 1954) [back injury]; Twin Harbor Stevedoring & Tug Co. v. Marshall, 130 F.2d 513 (9 Cir. 1939) [neck injury]; and Flores v. Bay Ridge Operating Co., Inc., 131 F.2d 310 (2 Cir. 1942) [back injury].

with prosecution of the claim before the Deputy Commissioner. He has included a prayer here for reasonable attorney fees commensurate with the services reasonably rendered, on grounds that the fee set was not in accordance with law and the evidence in the case. No where does the record indicate that the attorney submitted an application to the Deputy Commissioner supported by a sufficient statement of the extent and character of the necessary work done on behalf of the claimant. This left the Deputy Commissioner clearly within the letter of the pertinent regulation to approve a fee

> "reasonably commensurate with the actual necessary work performed by such representative, taking into account the capacity in which the representative has appeared, the amount of compensation involved, and the circumstances of the claimant." 20 C.F.R. § 31.21.

Not so clear is whether on the facts present in this case the fee is reasonable and in accordance with the test specified in the regulation.

Mr. Bruno has represented claimant as his sole attorney from October 17, 1961, to the present. He prepared for and conducted two days of hearings before the Deputy Commissioner, examining seven witnesses, five of whom were medical experts. Through this attorney's efforts a compensation award exceeding $15,000.00 was secured, and this appeal, albeit unsuccessful, was prosecuted. As to claimant's circumstances, the records of J. P. Florio & Company indicate that plaintiff has been recently earning as much as $400.00 per month. This Court holds that under the test specified in the regulation, in light of the circumstances indicated above, and in accordance with Section 28(a) of the Act[9], the attorney is awarded an additional fee of Five Hundred Dollars ($500.00) for his services.[10]

9. 33 U.S.C.A. § 928(a).

10. Radcliff Gravel Co. Inc. v. Henderson, 138 F.2d 549 (5 Cir. 1943); Fidelity &

Casualty Co. of New York v. Henderson, 128 F.2d 1019 (5 Cir. 1942).